SECOND INJURY FUND *v.* Eddie L. ROBISON, et al.

CA 87-105                                737 S.W.2d 162

Court of Appeals of Arkansas
Division I
Opinion delivered September 30, 1987

158

*David L. Pake*, for appellant.

*Walker & Morris*, by: *Eddie H. Walker, Jr.*, for appellee Eddie L. Robison.

*Warner & Smith,* by: *G. Alan Wooten,* for appellees Golden Acorn, Inc. and Fireman's Fund Insurance Companies.

JAMES R. COOPER, Judge. Eddie Robison, an appellee in this Workers' Compensation case, was employed by Ayers Furniture Company for approximately eighteen years. While in the employ of Ayers Furniture on May 22, 1980, Robison sustained a back injury while lifting a fifty-five gallon barrel of glue. As a result of that injury, Robison underwent surgery by Dr. Dulligan, who assigned him a fifteen percent permanent partial impairment rating on January 22, 1981. A hearing was held on April 16, 1981, and it was determined that Robison suffered disability in the amount of forty percent to the body as a whole as a result of his May 1980 injury. Robison returned to work at Ayers in September 1980, but underwent another period of hospitalization in November 1980. Upon release from hospitalization, Robison found that Ayers Furniture no longer had a job for him. In November 1982 Robison began work for the appellee, Golden Acorn, Inc. On December 3, 1984, Robison sustained another back injury while lifting a table in the course of his employment with Golden Acorn. Robison's primary treating physician, Dr. Duffner, assigned him a permanent partial impairment rating of fourteen percent. A hearing was held on September 24, 1985, to determine the issues of rehabilitation and the extent of Robison's disability. The administrative law judge determined that, inasmuch as it was the appellant Second Injury Fund and not Robison that requested that a rehabilitation analysis be performed, the cost of any such analysis should be paid by the Second Injury Fund rather than by Golden Acorn. In an opinion dated May 21, 1986, the administrative law judge found that Robison fell within the odd lot category of employees, and that he was permanently and totally disabled. The administrative law judge additionally found that Robison suffered a wage-loss disability in the amount of forty percent prior to his injury of December 1984 at Golden Acorn, and that the appellant Second Injury Fund was liable for all benefits in excess of the fourteen percent permanent partial disability rating assigned by Dr. Duffner. The Workers' Compensation Commission adopted the administrative law judge's decision in an opinion filed January 21, 1987. From that decision, comes this appeal.

For reversal, the appellant Second Injury Fund contends

that there is no substantial evidence that Robison suffered from any disability resulting from a condition existing prior to and at the time of his injury of December 1984; that there is no substantial evidence that Robison is permanently and totally disabled; and that the Commission erred in adopting the opinion of the administrative law judge because, the appellant asserts, that opinion was devoid of specific findings of fact. We affirm.

The appellant first argues that there is no substantial evidence that Robison suffered from a disability prior to and at the time of his last injury, that of December 1984. In determining the sufficiency of the evidence to support the findings of the Workers' Compensation Commission, we review the evidence in the light most favorable to the Commission's findings, and we must affirm if there is any substantial evidence to support them. *Central Mahoney, Inc.* v. *York*, 10 Ark. App. 254, 663 S.W.2d 196 (1984).

Viewed in that light, the evidence reflects that Robison suffered a compensable injury in May 1980 and was treated by surgery. Moreover, Robison returned to work at Ayers Furniture for several months in 1980, but was rehospitalized in November of that year due to continuing trouble. When Robison returned to Ayers Furniture after this second period of hospitalization, he learned that he no longer had a job. Robison had been employed by Ayers Furniture for approximately eighteen years at the time of his termination. In January 1981, Dr. Dulligan assigned Robison a permanent partial impairment rating of fifteen percent. Robison testified that, although he never had trouble finding a job before, he experienced substantial difficulty securing employment after his injury at Ayers Furniture. Finally, Robison testified that he gave up hobbies such as hunting and fishing after his May 1980 injury, and spent his off-work hours lying down and resting. The essence of the appellant's argument is that there is an absence of substantial evidence to support a finding that Robison had a pre-existing condition that was independently causing a loss of earning capacity prior to the second injury which continued to do so after that injury, as required by *Second Injury Fund* v. *Coleman*, 16 Ark. App. 188, 699 S.W.2d 401 (1985), and *Harrison Furniture* v. *Chrobak*, 2 Ark. App. 364, 620 S.W.2d 955 (1981). The appellant cites *Second Injury Fund* v. *Fraser-Owens, Inc.*, 17 Ark. App. 58, 702 S.W.2d 828 (1986), for the

proposition that prior rejection for employment does not constitute substantial evidence to invoke Second Injury Fund liability under the above-stated requirement, and *Second Injury Fund* v. *Coleman, supra*, as support for its contention that an award of compensation by an administrative law judge is not substantial evidence to prove the existence of a pre-existing condition causing a loss of earning capacity prior to the second injury and thereafter.

We note that the circumstances presented in the case at bar are clearly distinguishable from the facts of *Fraser-Owens, Inc.* In that case, we held that a Workers' Compensation Commission finding of a pre-existing disability was not supported by substantial evidence where the only evidence of loss of earning capacity was the claimant's rejection for employment on one occasion, ten years prior to his compensable injury. The claimant's rejection was based upon a pre-employment physical in which X-rays of his lower lumbar spine revealed evidence of a spondylolysis involving L5. The claimant in *Fraser-Owens, Inc.* testified that he was shocked at this revelation because he had never had any back problems. There was evidence that the claimant was born with his back condition, and that persons suffering from spondylolysis were more susceptible to back injuries than people without it. Following his rejection for employment, the claimant in *Fraser-Owens, Inc.* worked in a number of strenuous occupations, including installing septic systems, digging ponds, building roads, and working as a welder on an offshore drilling rig. Despite his engagement in these taxing occupations, the claimant in *Fraser-Owens, Inc.* suffered no back problems up until the time of his compensable injury, ten years after the rejection for employment.

In contrast, the claimant in the case at bar, Robison, suffered an initial injury which required surgical correction and two separate periods of hospitalization. Moreover, he was dismissed by his employer of eighteen years following his second hospitalization. Finally, Robison testified that, despite numerous applications for employment, he experienced a great deal of difficulty in finding a job after his initial injury, and that it was not until approximately two years after his injury at Ayers Furniture that he finally obtained employment with Golden Acorn.

Nor are the circumstances in the case at bar completely

analogous to those presented in *Second Injury Fund* v. *Coleman, supra*. Although the claimant's initial injury in *Coleman* resulted in a joint petition awarding him $12,000.00 in settlement of his claim, there was no mention of any degree of permanent disability in either the order or the petition; to the contrary, the only report by Coleman's surgeon prior to the second injury stated that Coleman was doing extremely well and would soon be able to return to a job requiring him to lift 200 pounds, and no degree of permanent disability was assigned. In contrast, in the case at bar, Robison's initial injury resulted in the assignment of a fifteen percent permanent partial impairment rating, culminating in a determination that Robison suffered forty percent disability to the body as a whole as a result of his initial injury.

The appellant argues that Robison's employment by Golden Acorn demonstrates that he regained his earning capacity prior to the time of his second injury. We are not unmindful of the fact that Robison eventually secured employment with Golden Acorn in a position similar to the one he held at Ayers Furniture at the time of his May 1980 injury, or that his wages at Golden Acorn were somewhat higher than those he had been earning at Ayers Furniture. Nevertheless, we have held that a worker may be entitled to additional wage-loss disability even though his wages remain the same or increase after the injury. *City of Fayetteville* v. *Guess*, 10 Ark. App. 313, 663 S.W.2d 946 (1984). We think that the same general principle is applicable in the case at bar, where the issue is whether Robison was suffering from a disabling condition prior to and at the time of his second injury, because "disability," in the workers' compensation sense, is not based upon loss of earnings *per se*, but rather is defined in terms of loss of earning *capacity. See* Ark. Stat. Ann. § 81-1302(e) (Repl. 1976). Under the circumstances presented in the case at bar, where the appellee/claimant suffered an initial injury requiring surgery, resulting in a permanent partial disability rating and a determination by the Commission of forty percent disability to the body as a whole; where he returned to work for his initial employer but was terminated following a second period of hospitalization stemming from that injury; and where there is evidence that he subsequently attempted to obtain employment but encountered substantial difficulty in doing so, we hold that there is substantial evidence to support the Commission's finding

that he suffered a disability resulting from a condition existing prior to and at the time of his second injury.

The appellant next argues that there is no substantial evidence to support the Commission's finding that Robison is permanently and totally disabled. The Workers' Compensation Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other elements affecting wage loss, such as the claimant's age, education, and experience. *Oller* v. *Champion Parts Rebuilders, Inc.*, 5 Ark. App. 307, 635 S.W.2d 276 (1982). The Commission's specialization and experience make it better equipped than we are to analyze and translate evidence into findings of fact. *Bemberg Iron Works* v. *Martin*, 12 Ark. App. 128, 671 S.W.2d 768 (1984). In the case at bar there was evidence that Robison was assigned a permanent partial impairment rating of fourteen percent following his second injury; that he attempted to return to Golden Acorn for light work following that injury but was unable to continue; that he is approximately fifty years of age with work experience only in manual, unskilled labor; and that, with his second-grade education, he is unable to read or write on a functional level. Where, as here, the issue is whether a finding of the Commission is supported by substantial evidence, we must affirm if reasonable minds could reach the conclusion arrived at by the Commission, even when a preponderance of the evidence might indicate a contrary result. *Osage Oil Co.* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 786 (1985). We believe that reasonable minds could conclude, on the record in the case at bar, that Robison was permanently and totally disabled, and we hold that the Commission's finding is supported by substantial evidence.

Next, the appellant contends that the Commission erred in adopting that portion of the administrative law judge's opinion holding that the Second Injury Fund is responsible for the costs of rehabilitation. However, neither the opinion of the Commission nor that of the administrative law judge state that the appellant Fund was required to pay the cost of rehabilitation. Instead, reference to this issue is found in a letter from the administrative law judge to the attorneys involved in this case where the administrative law judge stated that "[i]f the Second Injury Fund wishes a rehab report, it is up to the Second Injury Fund to pay for it. The Claimant has not requested one." This statement must be

viewed in the context of efforts by the Second Injury Fund to determine Robison's willingness to participate in a rehabilitation program. In his answers to interrogatories, Robison indicated that he was not interested in pursuing rehabilitation. At the hearing, Robison stated that he would be willing to undergo rehabilitation analysis, although he had little hope that he would be able to be successfully retrained. Thereafter, in a letter to the administrative law judge, Robison's attorney made it clear that it was the Second Injury Fund and not Robison that was requesting rehabilitation analysis in this case. There followed an exchange of letters between the parties' counsel through the administrative law judge characterized by the Second Injury Fund's persistent attempts to obtain a rehabilitation analysis of Robison at Golden Acorn's expense and to obtain a definite statement from Robison as to whether he would consent to such analysis at Golden Acorn's expense. These letters make it clear that the position of the parties was that Robison did not request an analysis but would consent to analysis at the Second Injury Fund's expense; that Golden Acorn would not pay for an analysis in the absence of a request for rehabilitation by the claimant; and that the Second Injury Fund wanted either an analysis performed at Golden Acorn's expense, or a statement by Robison that he refused to consent to analysis.

Arkansas Statutes Annotated § 81-1310(f) (Supp. 1985) makes it clear that an employee shall not be required to enter a vocational rehabilitation program against his consent, but instead must take the affirmative step of filing a request to enter such a program with the Commission. If the employee's request is granted, the employer is responsible for additional payments for vocational rehabilitation. The crucial fact in the case at bar is that Robison never requested vocational rehabilitation, but merely consented to undergo rehabilitation analysis at the Second Injury Fund's request, provided that the Fund would bear the expense.

The appellant also contends under this point for reversal that Robison was unwilling to participate in rehabilitation, and that his unwillingness should have been taken into consideration by the Commission under *Oller* v. *Champion Parts Rebuilders, supra.* In *Oller,* we stated that:

> [T]here is the matter of appellant's lack of interest in exploring vocational rehabilitation. . . . [T]he Arkansas

Supreme Court has said: "Whether or not an injured employee can be retrained is a pertinent factor in determining the amount, if any, of wage earning loss. If no rehabilitation evaluation is made, the Commission has no way of knowing whether the employee could have been retrained." *Smelser* v. *S.H. & J. Drilling Co.*, 267 Ark. 996, 593 S.W.2d 61 (1980).

In a recent case we upheld the commission's award of 35% permanent partial disability to a claimant who testified that while he could no longer follow his former occupation as a welder, he had made no real effort to either seek employment in other fields for which his education and experience might qualify him or to determine whether he was able to perform the duties of such other pursuits. In that case, the Commission had found that these circumstances effectively blocked full assessment of all factors in determining ultimate disability. *Rapley* v. *Lindsey Construction Co.*, 5 Ark. App. 31, 631 S.W.2d 844 (1982).

If, in the instant case, appellant's lack of interest in exploring vocational rehabilitation was an impediment to the commission's full assessment of appellant's loss of earning capacity, she cannot be heard to complain of that now. The commission has found she has not sustained her burden of proving, by a preponderance of the evidence, that she is permanently and totally disabled. We cannot say its finding of 25% permanent partial disability is not supported by substantial evidence.

*Oller*, 5 Ark. App. at 312-13.

In the *Smelser* case, cited in *Oller* for the proposition that a rehabilitation analysis is a pertinent factor in determining the amount of wage-earning loss, the claimant refused to undergo rehabilitation despite the fact that the Commission directed him to do so. That portion of the Commission's opinion quoted in *Smelser* reveals that the Commission did not believe that the evidence supported an award of disability benefits in excess of the claimant's physical impairment rating, and implies that the reason for this lack of evidence was the claimant's refusal to undergo rehabilitation analysis. Under these circumstances, the Supreme Court stated that "[i]f no rehabilitation analysis is

made the Commission has no way of knowing whether he could be retrained." *Smelser*, 267 Ark. at 998. Likewise, in *Rapley*, the Commission found that its efforts to assess the extent of the claimant's disability were blocked by the claimant's "lack of interest in vocational rehabilitation." 5 Ark. App. at 34.

■ We think that the above-cited cases demonstrate that the Commission may properly take a claimant's refusal to pursue rehabilitation into account in determining his degree of disability where that refusal hinders the Commission's attempts to assess the extent of disability. However, it is clear that, in the case at bar, the Commission did not consider Robison's failure to request rehabilitation analysis to be an impediment to its determination of permanent total disability, which it found based upon his physical injury, his age, his second-grade education, and his unskilled manual labor experience. Under these circumstances, we hold that the Commission was not required to consider Robison's failure to request rehabilitation in determining the degree of his disability.

■ The appellant finally contends that the Commission erred in adopting the opinion of the administrative law judge, asserting that the opinion did not include specific findings of fact as required by *Wright* v. *American Transportation*, 18 Ark. App. 18, 709 S.W.2d 107 (1986). We do not agree. In the case at bar, the Commission adopted the administrative law judge's findings that Robison had a permanent partial impairment of fourteen percent to the body as a whole; that he fell within the odd lot category of workers and was permanently and totally disabled; that he had a permanent partial wage-loss disability of forty percent prior to his injury of December 1984; and that the Second Injury Fund was responsible for the payment of all benefits in excess of a fourteen percent impairment to the body as a whole. Robison's medical history, injury, work experience and educational background were discussed both in the Commission's opinion and in the opinion of the administrative law judge. We hold that the findings and the discussion of facts in the Commission's opinion were sufficient to satisfy the standard enunciated in *Wright, supra.*

Affirmed.

CORBIN, C.J., and COULSON, J., agree.