## Sara BRADLEY v. ALUMAX

CA 94-743                                    899 S.W.2d 850

Court of Appeals of Arkansas
En Banc
Opinion delivered June 14, 1995

14

*Denver L. Thornton*, for appellant.

*Shackleford, Shackleford & Phillips, P.A.*, for appellee.

JOHN MAUZY PITTMAN, Judge. Appellant Sara Bradley appeals the Arkansas Workers' Compensation Commission's decision awarding a 15 percent permanent impairment rating and 30 percent wage-loss disability. Appellant argues that the decision is not supported by substantial evidence in that she is totally and permanently disabled. We affirm.

■ On appeal in workers' compensation cases, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and will affirm if those findings are supported by substantial evidence. *Wright* v. *ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Cagle Fabricating & Steel, Inc.,* v. *Patterson*, 42 Ark. App. 168, 856 S.W.2d 30 (1993).

On January 3, 1989, appellant sustained a compensable injury to her neck while lifting a 55 gallon drum. Dr. Richard Jordan, a neurosurgeon, performed a cervical diskectomy on June 2, 1989. Dr. Jordan's January 29, 1990, report stated that when appellant returned to work, which was estimated to be in March 1990, she should not lift more than 50 pounds and limit lifting over her head, pushing, pulling, bending and stooping. Dr. Jordan assigned a 15 percent impairment rating for her neck injury. On April 6, 1990, Dr. Jordan restricted appellant to lift no more than 25 pounds. Appellant returned to work in March 1990 and continued until February 4, 1991, when she quit because of pain in her arms and neck. Appellant has not worked since that time nor has she sought work.

Appellant testified that frequent bending or lifting causes her neck to swell which results in choking. She further stated that she has difficulty reaching over her head, going up and down stairs, and grasping with her hands, and that writing causes her hand to cramp. Her main problems are her arms, hands and neck.

She said that she does limited housework, but is in pain while doing it. She is able to drive a car for short distances. She stated that she cannot sit for longer than 30 minutes to an hour at a time. However, she said that she does not have any trouble walking or standing.

██ Appellant is 48 years old, has a GED and can read and write. She has worked as a waitress, manual laborer, assistant in a tree nursery and sewing machine operator. The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Grimes* v. *North American Foundry*, 42 Ark. App. 137, 856 S.W.2d 309 (1993). The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education and work experience. Ark. Code Ann. § 11-9-522(b) (1987); *Grimes, supra.*

██ The Commission stated, "Although the medical records indicate that [appellant] could not return to her former employment or heavy labor, they do not indicate that the [appellant] is unable to perform any gainful employment." The Commission also noted appellant's failure to complete a work hardening program, disinterest in any rehabilitation, lack of motivation to return to work, and no attempt made to seek work. There is substantial evidence to support the Commission's award of permanent disability benefits and finding that appellant is not totally and permanently disabled.

Affirmed.

MAYFIELD and COOPER, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree with the majority decision in this case because the Commission did not follow established case law with regard to the odd-lot doctrine, and if that law were applied, fair-minded persons would find that the appellant is totally and permanently disabled. Because the majority opinion paints with such a broad brush, I submit a more detailed summary of the evidence.

At the time of the hearing on October 7, 1992, appellant was 48 years old, had obtained a GED, and over the years had worked at a drive-in; counted seedlings for Weyerhaeuser in a

nursery; worked for Deltic Timber at various duties, including running a trim saw, as a stacker, as a bander, and counting; and she had been employed by Capitol City Quilting running a sewing machine. Then, in 1981, she went to work for the appellee. On January 3, 1989, while on light duty as a result of a carpal tunnel syndrome injury, and while wearing a brace on her left hand, the appellant attempted to lift a 55-gallon drum with dirt and trash in it, and she sustained a ruptured disc in her neck.

She was first treated for her neck injury by Dr. Thomas Pullig, a family doctor, who recommended physical therapy. When conservative treatment was unsuccessful, Dr. Pullig referred appellant to Dr. Bud Dickson, an orthopaedist, who diagnosed a cervical herniated disc and referred appellant to Dr. F. Richard Jordan, a neurosurgeon.

Dr. Jordan performed an anterior cervical diskectomy and interbody fusion at C6-7 and C7-T1 on June 2, 1989. Appellant testified that she has not done well since the surgery. She has to take pain medication nightly; when she goes to bed she has to prop her arms on something to keep them from hanging while she sleeps; and she has to use a posture pillow for her neck. She said that in the mornings her neck is sometimes "locked up," and she has to take medication to release it. Other times she can get up but still has a lot of pain. In rainy weather her pain is worse. Appellant said she returned to work in 1990 and worked until February 5, 1991, but was unable to continue.

Appellant testified that she attempted to go through a work-hardening program but was only able to stay about four days because, while doing exercises, she began to have chest pains, and was taken by ambulance to the hospital where she stayed four days. She has not attempted to return to any work-hardening program. Appellant said she is unable to do yard work, housework, tend her flower beds, lift or bend, or raise her arms to get things off of shelves. She says her daughter goes shopping with her to carry the groceries, she takes pain medication daily, and she is drawing social security disability. Appellant related that before her injury she had enjoyed doing crafts but can no longer even do that.

The medical evidence shows that appellant seemed to be recovering nicely from her disc surgery and was released to return

to work as of April 2, 1990, with the restriction that she not lift over twenty-five pounds and that she limit any lifting above her head, any pushing, pulling, bending, and stooping. In a letter to the insurance carrier dated April 9, 1990, Dr. Jordan reported that appellant had a 15% impairment rating to the whole body for her neck injury. On August 14, 1990, Dr. Jordan reported to the insurance carrier that appellant was working with some discomfort because of repeated bending during the day, but her employer was working with her in adjusting her duties to accommodate her limitations. And on February 21, 1991, Dr. Jordan wrote the insurance carrier that appellant, although still working for appellee part-time, was having an increase in neck pain and headaches, and he ordered an MRI.

In another letter, dated March 12, 1991, Dr. Jordan informed the insurance carrier that the MRI revealed progressive spondylosis at C3-4 and C4-5 and, although it "is almost inevitable" that appellant will require further surgery, she was not mentally ready for it, and he had treated her with "a temporizing maneuver, i.e. the epidural steroid injection." Dr. Jordan also stated in this letter:

> As I see it now this woman is definitely destined for long-term problems and I see very little possibility that she is going to successfully return to her previous job which was a very heavy duty one and as a practical matter doubt that she will ever be able to engage in full-time productive employment. This is not only because of her cervical spine problems but also by her hypertension and diabetes.

The administrative law judge held that appellant had proved she was permanently and totally disabled. The Commission reversed that decision and held appellant was entitled to a 15% anatomical impairment rating and a 30% wage-loss disability for a total of 45% permanent partial disability rating to the body as a whole. The Commission stated:

> We find it significant that claimant is relatively young, 48 years of age. Claimant, if she would return to the work force, would have several years of gainful employment. Additionally, claimant is relatively well educated. She is able to read and write. She testified that she can read a newspaper. Although claimant dropped out of high school

in the eleventh grade, she obtained a GED. Claimant also has varied work experience. She has worked as a waitress, as a manual laborer, as an assistant in a tree nursery, and as a sewing machine operator. There is insignificant evidence in the record that claimant could perform a task similar to one of her past jobs.

Furthermore, we find it extremely significant that claimant has *no* motivation to return to work. Not only did claimant fail to complete a work hardening program, she has not expressed any interest in *any* rehabilitation. Claimant has not attempted to return to any gainful employment since leaving respondent. In fact, it does not appear that claimant has even looked for employment. Claimant is presently drawing social security disability benefits and is apparently content. Claimant's husband is also drawing social security.

Although the medical records indicate that claimant could not return to her former employment or heavy labor, they do not indicate that the claimant is unable to perform any gainful employment. The medical records also show that claimant has numerous other nonwork-related problems ranging from obesity to diabetes which contribute to her inability to perform manual labor eight hours a day. (Emphasis in the original.)

On appeal we view the evidence in the light most favorable to the Commission's decision and affirm that decision if it is supported by substantial evidence; moreover, we may not reverse the Commission unless fair-minded persons could not have reached the Commission's decision upon the same facts. *See Hall's Cleaners* v. *Wortham*, 311 Ark. 103, 842 S.W.2d 7 (1992). However, when the law is properly applied and all the evidence in this case is examined and considered, I do not believe that fair-minded persons could reach the same conclusions reached by the Commission.

First, I note that Dr. Jordan's letter of March 12, 1991, referred to above, states that "as a practical matter" he doubts the appellant "will ever be able to engage in full-time productive employment." This letter, in light of the other testimony in the record, clearly presents the "odd-lot doctrine," but the Commis-

sion's opinion does not even refer to the doctor's letter. The law judge's opinion states that "the claimant has at least shown that she falls within the odd-lot category." However, as the appellant's brief states, the Commission "just ignored the odd-lot doctrine."

In *M.M. Cohn* v. *Haile*, 267 Ark. 734, 589 S.W.2d 600 (Ark. App. 1979), in a opinion by Judge Newbern, this court examined the Arkansas Supreme Court decisions and Larson's treatise on workers' compensation law and held that "the foregoing authorities permit the Commission to consider the age of the claimant and her overall condition and prospects for employment." 267 Ark. at 737, 589 S.W.2d at 602. The opinion quoted from 2 Larson, *Workmen's Compensation Law* § 57.61 (1976) [now § 57.61(c)], as follows:

> If the evidence of degree of obvious physical impairment, coupled with other factors such as claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to claimant.

The above quotation is followed by the court's statement that: "The odd-lot doctrine refers to employees who are able to work only a small amount. The fact they can work some does not preclude them from being considered totally disabled if their overall job prospects are negligible." 267 Ark. at 736, 589 S.W.2d at 602.

Our cases have consistently followed the *Cohn* v. *Haile* case. In *Hyman* v. *Farmland Feed Mill*, 24 Ark. App. 63, 748 S.W.2d 151 (1988), we affirmed the Commission's finding of total and permanent disability. In response to the contention that there was not substantial evidence to support the Commission's finding that the claimant fell into the odd-lot category, we said although there was evidence that the claimant regularly engaged in square-dancing, that fact alone should not preclude a finding that he was in the odd-lot category. We also said:

> [H]ere there was evidence that the employee was a fifty-one year old high school dropout, skilled only as a maintenance mechanic. Moreover, there was evidence that the

> appellant was required to take daily medication which made him drowsy and rendered it dangerous for him to operate vehicles or machinery.

24 Ark. App. at 67, 748 S.W.2d at 153.

The appellant's brief in this appeal cites the cases of *Walker Logging* v. *Paschal*, 36 Ark. App. 247, 821 S.W.2d 786 (1992), and *Moser* v. *Arkansas Lime Co.*, 40 Ark. App. 108, 842 S.W.2d 456 (1992), where we held that when there is obvious physical impairment coupled with such factors as education, training, or age, which places a claimant *prima facie* within the odd-lot category, the burden is on the employer to show that "suitable work is regularly and continuously available" to the claimant. The appellee's brief agrees with the above definition of the odd-lot doctrine and admits that where a *prima facie* showing is made, the burden falls on the employer to establish that some kind of suitable work is regularly and continuously available to the claimant.

Second, the March 12, 1991, letter of Dr. Jordan stating that "as a practical matter" he doubts the appellant "will ever be able to engage in full-time productive employment" should be sufficient to make a *prima facie* showing that the appellant here falls within the odd-lot category. Clearly her own testimony corroborates that position, and the Commission does not point to any evidence that shows there is some kind of suitable work regularly and continuously available to the appellant. All that the Commission does in that regard is to point out that the appellant has worked as a waitress, as a manual laborer, as an assistant in a tree nursery, and as a sewing machine operator. But this evidence does not meet the employer's burden of showing that there is some kind of suitable work regularly and continuously available to her.

The same conclusion must also be reached as to the Commission's reference to the appellant's ability to read and write and to the fact that she has obtained a GED. It is the lack of physical capacity — not lack of ability to read and write — that puts appellant in the odd-lot category. And the Commission's statement that "claimant is relatively young" and "if she would return to the work force, would have several years of gainful employment" obviously is based upon the assumption that there

is work that she can do. But willingness to return to work and being able to work are two different things.

So, the Commission's opinion has ignored the odd-lot doctrine to which the law judge's opinion refers, and in which category the appellant is *prima facie* placed by the evidence. It follows, therefore, that the Commission would state "although the medical records indicate that claimant could not return to her former employment or heavy labor, they do not indicate that the claimant is unable to perform any gainful employment." But the Commission has erred in failing to realize that under the evidence here the established case law placed the burden on the *appellee* to show that there was suitable work regularly and continuously available to the appellant.

I would also point out that the Commission makes an error in relying upon its observation that appellant has not expressed any interest in rehabilitation. Although she did attempt a work hardening program and after four days had to be taken by ambulance to the hospital, the law at the time of the hearing in this case provided that an employee "shall not be required to enter any program of vocational rehabilitation against his consent." Ark. Code Ann. § 11-9-505(b) (1987). And we have held that the Commission may take a claimant's refusal to pursue rehabilitation into account in determining his degree of disability only "where that refusal hinders the Commission's attempts to assess the extent of disability." *Second Injury Fund* v. *Robinson*, 22 Ark. App. 157, 166, 737 S.W.2d 162, 167 (1987). Here, the Commission used the refusal to pursue rehabilitation as evidence to fix the extent of disability — this violates the statute.

Also, the Commission's statement that the appellant "is presently drawing social security disability benefits and is apparently content" is, in my judgment, both ungracious and confused. The truth of the matter is that a finding of disability by one government agency has been said to be entitled to "great weight" by another agency. *Johnson* v. *Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990). The Commission also added "Claimant's husband is also drawing social security." This is obviously gratuitous and without relevance.

And finally, the Commission's statement that the appellant has "numerous other non-work-related problems ranging from

obesity to diabetes which contribute to inability to perform manual labor eight hours a day" certainly tends to debase the Commission's finding that appellant "would have several years of gainful employment" if she would "return to the work force." Moreover, the appellant went to work for the appellee in June of 1981, and in May of 1988 she injured her left wrist while at work for appellee. At that time she was given authorization to see the "company doctor" who subsequently sent her to Dr. John E. Hueter. That doctor's report of his August 1988 examination states the appellant was "a rather large" woman who had been employed by the appellee for "8 years doing hard labor and repetitious work." The report also said the appellant had a history of hypertension and irregular heart beat. Then, after working for the appellee for about eight years, the appellant sustained a ruptured disk in her neck while lifting a 55-gallon drum for appellee. At that time she weighed about 240 pounds and Dr. Jordan reported she would never be able to again engage in full-time work, not only because of her cervical spine injury but also because of hypertension and diabetes.

Her attorney points out that an employer takes an employee as the employer finds him, and employment circumstances that aggravate pre-existing conditions are compensable. *Nashville Livestock Comm'n* v. *Cox*, 302 Ark. 69, 787 S.W.2d 664 (1990), and *Public Employee Claims Division* v. *Tiner*, 37 Ark. App. 23, 822 S.W.2d 400 (1992), are correctly cited in support of these statements of the law.

In sum, the Commission did not follow the established odd-lot doctrine, and, if that law is applied, fair-minded persons would find that the appellant is totally and permanently disabled. I dissent from the majority's failure to properly apply the applicable law in this case.

COOPER, J., joins in this dissent.