GEORGIA-PACIFIC CORPORATION *v.* Laurin DICKENS

CA 97-74                                    950 S.W.2d 463

Court of Appeals of Arkansas
Division III
Opinion delivered September 10, 1997

*Wright, Lindsey & Jennings*, by: *John D. Davis*, for appellant.

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *Floyd M. Thomas, Jr.*, for appellee.

ANDREE LAYTON ROAF, Judge. Georgia-Pacific Corporation appeals a ruling by the Workers' Compensation Commission that the appellee Laurin P. Dickens was entitled to compensation for routine medical care provided to her in 1993, 1994, and 1995, for a compensable injury which she sustained in 1984. On appeal, Georgia-Pacific argues that there is no substantial evidence to support the Commission's findings 1) that the medical care was reasonably necessary for the treatment of Dickens's injury, and 2) that Dickens's claim, which was filed in 1995 for additional benefits, is not barred by the statute of limitations. We affirm.

Dickens sustained a compensable right elbow injury in 1984. Surgery was performed on her elbow in 1986, 1988, and 1989, and Dickens returned to work at Georgia-Pacific in 1989. In 1991, her treating physician determined that her healing period had ended and assigned a permanent impairment rating to her right elbow and shoulder. Although Dickens was administratively terminated by Georgia-Pacific in 1992, the company continued to

pay for Dickens's routine follow-up visits to the University of Arkansas for Medical Sciences (UAMS) in 1992 and 1993.

On March 12, 1993, the administrative law judge (ALJ) issued an opinion in a separate claim, finding that Dickens had not sustained a right shoulder injury in addition to her compensable right elbow injury. Dickens did not appeal that ruling. Subsequently, Georgia-Pacific paid for Dickens's May 21, 1993, visit to UAMS for treatment of her elbow, but failed to pay for any further visits, although they acknowledged that they had received bills for Dickens's office visits on April 21, 1994, and March 31, 1995. Dickens was not charged for a visit on November 4, 1993, and, therefore, no bill was sent by UAMS for this service.

After receiving the bill for the March 31, 1995, examination, Georgia-Pacific sent a letter to Dickens on May 18, 1995, informing her that they would not pay any additional medical bills because the statute of limitations had run on her workers' compensation claim. Dickens filed a claim on May 24, 1995, for additional benefits, which gives rise to this appeal.

The ALJ denied Dickens's claim for additional benefits, finding that the medical services provided on November 4, 1993, and April 21, 1994, did not constitute reasonably necessary medical treatment because the record reflected that Dickens's visits to UAMS at approximately six-month intervals were for the purpose of keeping her workers' compensation claim open. The ALJ also found that Dickens's claim filed in 1995 was barred by the statute of limitations, because the visits in 1993 and 1994 were not reasonably necessary for the treatment of her injury and thus did not toll the statute of limitations.

The Commission reversed the decision of the ALJ, finding that the medical care provided to Dickens in 1993, 1994, and 1995, was reasonably necessary for treatment of her compensable injury. The Commission also found that the statute of limitations had not run on Dickens's claim because Georgia-Pacific was deemed to have continued to provide medical treatment to Dickens until they informed her that they would no longer do so in the letter of May 1995.

■    Georgia-Pacific first argues that there is not substantial evidence to support the Commission's finding that Dickens's visits to UAMS on November 4, 1993, and April 21, 1994, were reasonably necessary for the treatment of her injury. Arkansas Code Annotated § 11-9-508(a) (1996) states that an employer shall provide "such medical . . . services . . . as may be reasonably necessary in connection with the injury received by the employee." What constitutes reasonable and necessary treatment under this section is a question of fact for the Commission. *Gansky v. Hi-Tech Eng'g*, 325 Ark. 163, 924 S.W.2d 790 (1996) (citing *Arkansas Dep't of Correction v. Holybee*, 46 Ark. App. 232, 878 S.W.2d 420 (1994)); see also *Morgan v. Desha County Tax Assessor's Office*, 45 Ark. App. 95, 871 S.W.2d 429 (1994).

■    It is well settled that when reviewing decisions from the Workers' Compensation Commission, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms if supported by substantial evidence. *Crawford v. Pace Indus.*, 55 Ark. App. 60, 929 S.W.2d 727 (1996) (citing *Welch's Laundry & Cleaners v. Clark*, 38 Ark. App. 223, 832 S.W.2d 283 (1992)). The issue is not whether this court might have reached a different result from that reached by the Commission or whether the evidence would have supported a contrary finding. If reasonable minds could reach the result shown by the Commission's decision, the court must affirm the decision. *Bradley v. Alumax*, 50 Ark. App. 13, 899 S.W.2d 850 (1995).

In support of its argument that the visits were not reasonably necessary for the treatment of the 1984 injury, Georgia-Pacific relies upon the testimony of Dickens and upon notes made by the treating physicians during the disputed medical visits. During the hearing before the ALJ, Dickens testified that she began seeing the doctor at six-month intervals because she was advised by her attorney that she should always go back to the doctor every six months until her workers' compensation claim was settled.

The medical records of the office visits in dispute state in part:

November 4, 1993: Ms. Dickens RTC here today for follow up of right cubital tunnel syndrome. . . . She has been given a permanent impairment rating. She thinks she is about the same. . . . She is still a little tender about the elbow and there is no really appreciable Tinel. Status about the same with s/p anterior transposition of ulnar nerve. RTC six months for follow up.

April 24, 1994: Pt. is being followed on a bi-annual basis until her Worker's Compensation claim is settled. PE - She is no better or worse than she was six months ago. She has a slight pain around the cubital tunnel area, tenderness proximally and Tinel sign at Guyon's canal. . . . We will see this pt. again in six months for repeat clinical exam.

December 4, 1994: . . . This is a workman's compensation case and settlement has not been completed. She has symptoms of numbness to the ulnar distribution bilaterally, and it has remained stable. She is complaining of some new pain in the right shoulder. . . . Stable post-op course s/p bilateral cubital tunnel release. Due to her previous treatment by Dr. Hixson, I recommended to her that she should be followed by Dr. Hixson and a referral will be made for her to see Dr. Hixson. She will also be referred to Dr. Tom Roberts in the shoulder clinic.

March 31, 1995: Ms. Dickens was reexamined on March 30, 1995. Her injury appears to be stable since my last examination. Her main complaints are those of right elbow and shoulder pain and irritation along the course of the ulnar nerve. . . . She still uses her TENS unit and takes medication for her pain. . . . Ms. Dickens has remained approximately stable since her last examination. . . . I will be happy to examine her on an as-needed basis.

Dickens also testified at length about ongoing problems with her elbow, and stated that she continued to take medication and to use a TENS unit for pain. She testified that her treating physician advised her to return every six months, or earlier, if she had any problems.

In fact, the disputed visits were at intervals of six, six, eight, and three months, respectively. The records describe the ongoing nature of Dickens's symptoms, and indicate that she continued to use a TENS unit and take medication. In its decision, the Commission considered the multiple surgeries, Dickens's persistent symptoms of pain, irritation, and limitation of motion in her elbow, and her continued use of medication and a TENS unit for

pain control, in finding that the office visits to UAMS in 1993 through 1995 were reasonably necessary. The Commission further found that the medical evidence indicated that Dickens received examinations, diagnoses, and proposals for additional follow-up treatment during each of the disputed office visits.

■ As to Dickens's motivation for seeking follow-up care, the Commission stated that the issue was whether she was *entitled* to the follow-up care, not her reasons for seeking it, and concluded that she was so entitled. We agree, and hold that there was substantial evidence from which the Commission could find that Dickens's follow-up medical care was reasonably necessary for treatment of her compensable injury.

Although Georgia–Pacific also argues that there is not substantial evidence to support the Commission's finding that Dickens's claim for additional benefits is not barred by the statute of limitations, it concedes that this court should not reach this argument if we affirm the Commission's findings on its first point on appeal. In so doing, Georgia–Pacific acknowledges that it "cannot start the running of the statute of limitations by refusing to pay what it owes." *See Conway Printing Co. v. Higdon*, 45 Ark. App. 188-A, 878 S.W.2d 4 (1994).

Affirmed.

JENNINGS and MEADS, JJ., agree.