Lilly KILDOW *v.* BALDWIN PIANO & ORGAN

CA 99-38                                              999 S.W.2d 199

Court of Appeals of Arkansas
Division IV
Opinion delivered September 22, 1999

[Petition for rehearing denied November 3, 1999.]

*Mashburn & Taylor,* by: *Timothy J. Myers,* , for appellant.

*Ledbetter, Cogbill, Arnold & Harrison, LLP,* by: *James A. Arnold II* and *Rebecca D. Hattabaugh,* for appellee.

OLLY NEAL, Judge. Lilly Kildow appeals the order of the Workers' Compensation Commission finding that she failed to prove that she sustained a compensable injury. In *Kildow v. Baldwin Piano & Organ,* 58 Ark. App. 194, 948 S.W.2d 100 (1997) (*Kildow I*), this court reversed the Commission's order that denied the compensability of the claimant's claim for benefits related to carpal tunnel syndrome based upon the Commission's finding that her work activities did not involve rapid and repetitive motion. Our reversal was based upon the belief that the claimant had proven that her work involved rapid and repetitive motion. In *Kildow v. Baldwin Piano & Organ,* 333 Ark. 335, 969 S.W.2d 190 (1998) (*Kildow II*), the supreme court reversed our decision in *Kildow I,* and in doing so held that proof of rapid and repetitive motion was not necessary in workers' compensation claims where the alleged injury is carpal tunnel syndrome. The matter was then remanded to the Commission so that additional proceedings could be conducted consistent with the supreme court's opinion. On remand, the Commission determined that Ms. Kildow did not prove the compensability of her claim by offering objective medical findings. Ms. Kildow appeals to this court and argues two points for reversal: the Workers' Compensation Commission erred in rehearing this case on the merits and failing to apply the doctrines of *res judicata* and collateral estoppel; and, alternatively, that the Commission's decision is not supported by substantial evidence. We find no error and affirm.

Appellant first argues that the Commission erred in rehearing the merits of her claim on remand, and that the doctrine

of *res judicata* prohibits such action. The doctrine of *res judicata*, which is applicable to decisions of the Workers' Compensation Commission, forbids the reopening of matters once judicially determined by competent authority. *Thurman v. Clarke Indus., Inc.*, 45 Ark. App. 87, 872 S.W.2d 418 (1994). Appellant essentially contends that because the court of appeals held that her claim was compensable and remanded the matter to the Commission for an award of benefits in *Kildow I*, and because the supreme court, in *Kildow II*, only reversed *Kildow I* with regard to the statutory interpretation issue, the Commission's duty on remand was to award benefits. We disagree.

█ Appellant overlooks the standard the supreme court utilizes when reviewing cases that were originally decided by the court of appeals. When the supreme court grants review following a decision by the court of appeals, the case is reviewed as though the appeal was originally filed with the supreme court. *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 383, 944 S.W.2d 524, 525 (1997). Therefore, when the supreme court undertook a review in *Kildow II* it reviewed the Commission's decision, not that of the court of appeals. After the supreme court issued its opinion in *Kildow II*, its opinion became, for all intents and purposes, the only appellate opinion in the matter. Thus, to the extent that appellant's argument relies upon our opinion in *Kildow I*, such reliance is in error.

A plain reading of *Kildow II* leads to the conclusion that the supreme court intended that the Commission would review the merits of the claim to determine compensability. The supreme court made the following pronouncement:

> Finally, the Act provides safeguards to protect employers from claims that are feigned. In addition to showing that the injury arose out of and in the course of employment, the claimant must also produce objective medical evidence that the injury is compensable (section 11-9-102(5)(D)); and for injuries falling within the definition of rapid repetitive motion, the claimant not only bears the burden of proof by a preponderance of the evidence, but also must show that the alleged injury is the major cause of the disability or need for treatment (section 11-9-102(5)(E)(ii)).

. . . [t]he order of the Commission is reversed and *the case is remanded for further proceedings consistent with this opinion.* (Emphasis added).

*Kildow*, 333 Ark. at 340, 969 S.W.2d at 192.

█ It is clear that the supreme court intended that the Commission conduct further proceedings to determine if the claim was compensable, and not merely award benefits as appellant suggests. The appellant's first argument is without merit.

Appellant next argues that the Commission's determination that her carpal tunnel syndrome is not compensable is not supported by substantial evidence. The facts indicate that appellant was employed by appellee from February 1, 1993, until March 7, 1994. Her duties consisted primarily of manning a station on an assembly line where she secured small electrical components to a one-eighth-inch-thick board with three to five small wires that were two to three inches long. In January 1994, appellant began complaining to her supervisor of pain in her wrists. The pain gradually worsened until she was seen by the company physician, Dr. David Ureckis, on March 10, 1994.

In his initial report, Dr. Ureckis noted a nerve conduction velocity test suggesting borderline carpal tunnel syndrome. Dr. Ureckis fitted appellant with wrist splints, ordered her to temporarily cease working, prescribed anti-inflammatory medication, and referred her to Dr. Tom Patrick Coker for surgical evaluation.

Dr. Coker's initial report, dated March 31, 1994, indicated that appellant had an EMG which confirmed right carpal tunnel and that the left was insignificant. Appellant was seen by Dr. Coker on seven occasions and underwent a course of physical therapy over several months.

Appellant was involved in a motor-vehicle accident on August 20, 1994, which complicated her medical records with chiropractic and psychological treatment that was apparently unrelated to her workers' compensation claim. Appellant was referred to UAMS and treated by Dr. Harris Gellman, a professor and Chief of the Hand Surgery Service. Dr. Gellman reviewed the previous treating physicians' test results and noted appellant's com-

plaints before providing diagnoses of carpal tunnel syndrome and cubital tunnel syndrome. Appellant underwent a carpal tunnel release in July 1995, and cubital tunnel surgery in the summer of 1995.

In denying appellant's claim for benefits related to carpal tunnel syndrome, the Commission found that the objective medical findings documenting carpal tunnel syndrome failed to support a finding that appellant was entitled to further benefits.

█ We review decisions of the Workers' Compensation Commission and affirm if they are supported by substantial evidence. *Wright v. ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993). Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether this court might have reached a different result from that reached by the Commission or whether the evidence would have supported a contrary finding. *Bradley v. Alumax*, 50 Ark. App. 13, 899 S.W.2d 850 (1995). If reasonable minds could reach the result shown by the Commission's decision, we must affirm the decision. *Id.*

In making its decision to deny the compensability of appellant's claim, the Commission noted that the results of several nerve conduction studies performed after the intial study were within normal limits. The Commission also noted that Dr. Gellman based his carpal tunnel syndrome diagnosis on appellant's continued clinical complaints as well as her classical clinical examination. Also noted was the fact that Dr. Gellman's diagnosis of carpal tunnel syndrome was never confirmed by electrodiagnostic studies. In making its determination, the Commission reasoned:

> In light of claimant's negative nerve conduction tests after her release on July 19, 1994, Dr. Coker's negative clinical testing, and the claimant's August 20, 1994, automobile accident and subsequent symptoms discussed, we conclude that either the initial discrepancy, in fact, was within normal limits and claimant never actually had compensable carpal tunnel syndrome or that claimant failed to establish that Dr. Gellman's right carpal tunnel release surgery on July 6, 1995, was causally related to the claimant's work duties and any carpal tunnel symptoms that the claimant may have experienced in the spring and early summer of

1994. Either finding bears the same result: claimant has failed to prove entitlement to further benefits.

█ Because our standard of review requires that we affirm the Commission's decision if reasonable minds could have reached the conclusion arrived at by the Commission, we affirm the Commission's decision to deny benefits.

Appellant also contends that the Commission erred in determining that her claim for cubital tunnel syndrome, or ulnar nerve compression, was not compensable. In 1995, appellant was diagnosed by Dr. Gellman with cubital tunnel syndrome, which is the compression of the ulnar nerve at the elbow. Although there were objective medical findings that confirmed the cubital tunnel syndrome diagnosis, the Commission denied the compensability of appellant's injury. In doing so, the Commission noted that nerve conduction studies performed after appellant ceased her employment with appellee in March of 1994 and again in October of 1994 did not document any abnormality along appellant's ulnar nerve. The Commission supplied the following rationale for its decision:

> It was not until May of 1995, more than one year after claimant ceased her employment with respondent, that any problem was first detected by objective medical findings with claimant's ulnar nerve. During this time frame, claimant was involved in a severe motor vehicle accident which resulted not only in neck, upper back, and shoulder problems but also produced ". . . stiffness and pain in both arms which she thinks was from clenching the steering wheel." Although at the hearing claimant denied sustaining any injury to her upper extremities during the motor vehicle accident, it is our opinion that the history claimant provided to Dr. Davis on September 13, 1994, approximately three weeks after the accident is entitled to greater weight than claimant's testimony provided at the hearing more than a year later.

The Commission also noted the fact that Dr. Gellman drafted an opinion in September of 1995, in which he stated within a reasonable degree of medical certainty that appellant's cubital tunnel syndrome was causally related to her employment with appellee. However, he later acknowledged that at the time he prepared that opinion he was not made aware of appellant's

automobile accident. Dr. Gellman also acknowledged that the causation question would depend upon the degree of trauma that appellant sustained in the accident. The Commission then determined that Dr. Gellman's opinion should be entitled to little weight, and that under the circumstances appellant's negative nerve conduction studies, Dr. Coker's negative clinical testing in March of 1995, Dr. Coker's July 14, 1994, release of appellant with no impairment rating, and the various complaints appellant made to her physician after the August 1994 automobile accident would be afforded a much greater weight.

After weighing Dr. Gellman's written opinion against the other factors, the Commission found that appellant failed to establish that her cubital syndrome diagnosis in May of 1995 was causally related to her 1994 work for appellee. The Commission also found that appellant failed to prove by a preponderance of the evidence that her work duties were the major cause of her development of ulnar nerve compression that eventually required a cubital tunnel release. The Commission was of the opinion that too much time had elapsed between appellant's last day of work, the onset of her problems and the diagnosis of ulnar nerve compression for a causal connection to be found without giving appellant the benefit of the doubt.

Appellant argues that because this court has already determined that her tasks were rapid and repetitive, there is no reason why the court should change its prior decision to award benefits. However, because appellant has failed to establish the threshold requirement of proof by a preponderance of the evidence that the cubital tunnel syndrome injury arose out of and in the course of her employment, we need not address the issue of whether her work was rapid and repetitive. See Ark. Code Ann. § 11-9-102(5)(A)(ii) (Repl. 1996).

Moreover, the weight to be given medical testimony is for the Commission to determine. Carter v. Flintrol, Inc., 19 Ark. App. 317, 720 S.W.2d 337 (1986). Here, given the fact that the first objective medical evidence of appellant's cubital tunnel syndrome did not manifest itself until more than a year after appellant's last day of work in March of 1994, and the fact that appellant

was involved in an automobile accident in August of 1994 and at that time made complaints regarding arm pain to her physician, we hold that substantial evidence exists in the record that supports the Commission's decision.

Affirmed.

JENNINGS and GRIFFEN, JJ., agree.