Willie REED *v.* REYNOLDS METALS, et al.

CA 90-182 801 S.W.2d 661

Court of Appeals of Arkansas
Division I
Opinion delivered January 16, 1991

90

*B. Dewey Fitzhugh*, for appellant.

*Friday, Eldredge & Clark*, by: *James C. Baker, Jr.* and *J. Michael Pickens*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from a decision of the Workers' Compensation Commission.

Appellant, Willie Reed, sustained a compensable injury on April 17, 1979, when he was working from an elevated forklift platform and was struck by an overhead crane. Appellant received temporary total disability benefits from April 18, 1979, through September 3, 1979, and from December 18, 1984, through January 6, 1986; permanent partial disability benefits in a lump sum for 67 ½ weeks; and bi-weekly permanent partial disability benefits from January 7, 1986, through November 14, 1986.

On February 10, 1989, at a hearing before the administrative law judge, appellant contended he sustained emotional and psychological injuries as a result of the April 17, 1979, compensa-

ble injury which left him permanently and totally disabled; that he is entitled to additional temporary total disability from December 18, 1984, until October 18, 1988, when he was finally released by Dr. James Moneypenny; and that the appellee violated the Safe Place to Work Statute.

The administrative law judge found appellant had sustained permanent partial disability in the amount of 60 % to the body as a whole (25 % physical impairment, 5 % psychological impairment, and 30 % wage loss) as a result of the admittedly compensable injury; that appellant was not entitled to additional temporary total disability benefits; and that appellant failed to prove a safety violation pursuant to Ark. Code Ann. § 11-9-503 (1987). The full Commission reduced the disability to 30 % to the body as a whole (the amount of the anatomical rating) and affirmed the law judge on all other issues.

In its opinion, the Commission stated:

Here, instead of having motivation to look for additional employment, claimant has chosen to draw disability and retirement benefits from the respondent. In fact, claimant testified that he considers himself to be retired, and admitted drawing retirement benefits in an amount of $400.00 per month. Since claimant considers himself retired from the work force and is actually drawing retirement benefits, we find that he has suffered no loss in wage earning capacity. The Commission in the recent decision of *Edith Curry* v. *Franklin Electric Co.*, Full Commission opinion filed September 6, 1989 (D306062 and C803992), held that the claimant was not entitled to additional benefits since she was already receiving Social Security retirement benefits. This Commission reasoned that workers' compensation benefits were intended to replace income lost when a compensable injury impaired a claimant's earning capacity and since the claimant in *Curry* had retired from the work force, her earning capacity was no longer relevant. Similarly, the claimant in this case considers himself to be retired and is drawing retirement benefits from the respondent. Given those facts, we find claimant's earning capacity no longer relevant since he has voluntarily retired from the work force.

Therefore, based upon this fact as well as all of the other wage loss factors, we find that the claimant has failed to prove by a preponderance of the evidence that he has suffered any loss in wage earning capacity.

Appellant first argues the Commission erred in finding, since he voluntarily retired from the work force, his earning capacity is no longer relevant and in denying him permanent total disability benefits. Appellants contends that drawing retirement pay does not mean per se that a worker possesses no earning capacity.

A similar issue was addressed in the recent case of *Curry v. Franklin Electric*, 32 Ark. App. 168, 798 S.W.2d 130 (1990), where we reversed the decision of the Commission that denied the appellant permanent and total disability benefits, specifically wage loss benefits, based upon the appellant's receipt of social security benefits due to her age. In that case we said:

> Furthermore, in 1986, the legislature made extensive amendments restricting the receipt of wage loss disability benefits. *See*, Act 10 of 1986, now codified at Ark. Code Ann. § 11-9-522 (1987). Nowhere in these amendments is there a reference to the prohibition of workers' compensation benefits when a claimant is receiving or is entitled to receive social security benefits. . . . [A]t this time, we have no specific statutory authority providing for the total exclusion of workers' compensation benefits when a claimant is eligible for or is drawing social security benefits. . . . By this opinion, we do not mean to imply that the receipt of social security benefits could not be a factor in wage loss determinations. We state only that such benefits may not act as an absolute bar in the calculation of wage loss disability benefits.

32 Ark. App. at 173. In the instant case, as in *Curry*, the Commission made no finding with regard to appellant's wage earning capacity but found "claimant's earning capacity no longer relevant since he has voluntarily retired from the work force" and based its decision upon appellant's drawing of retirement benefits.

Therefore, we reverse on this point and remand to the Commission to determine appellant's wage loss disability based

on a consideration of appellant's age, education, experience, and other matters affecting wage loss. *See Glass* v. *Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961). *See also Arkansas State Police* v. *Welch*, 28 Ark. App. 234, 772 S.W.2d 620 (1989).

Appellant then argues the Commission erred in failing to grant the statutory penalty under Ark. Code Ann. § 11-9-503 (1987) and in holding that appellant did not meet his burden of proof in showing that appellee was guilty of a violation of a safety statute. Appellant does not rely on the violation of any specific Arkansas statute or official regulation pertaining to the health and safety of employees, but cites Ark. Code Ann. § 11-2-117 (1987), the general unsafe place to work statute in support of his argument. Appellant contends there were at least two company safety rules in effect at the time of the accident which, if followed, would have avoided appellant's injury, and that appellee knew of the risk of serious bodily injury several days before the accident but its supervisors failed to communicate and implement known procedures to avoid a risk of serious bodily injury.

Arkansas Code Annotated § 11-2-117 states:

> (a) Every employer shall furnish employment which is safe for the employees therein and shall furnish and use safety devices and safeguards. He shall adopt and use methods and processes reasonably adequate to render such an employment and place of employment safe and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of the employees.

Here, there is evidence that the appellee had written safety regulations concerning the operation of cranes near fork-lifts where men were working in an overhead area; that these rules were taught when employees took their training; that rules prohibiting a crane operator from moving over a fixed object were placed inside a "bridge crane," in areas of the plant where a monorail crane was operated from the floor, and were posted on the wall of the building nearby; and that there were established rules in place so this type of accident would not happen and to make the plant a safe place to work. There was also evidence that appellee held regular safety meetings with its employees to reinforce awareness of safety in the work place and what could be done to avoid accidents. The evidence demonstrates that appellee

made diligent efforts to provide its employees with a safe place to work and we affirm the Commission's finding that appellant failed to prove a safety violation.

Finally, appellant contends the full Commission's refusal to award additional temporary total disability benefits is not supported by substantial evidence. Appellant argues that the healing period has not ended so long as treatment is administered for the healing and alleviation of the condition and that his condition improved as a result of Dr. Moneypenny's treatment.

We are unable to address this issue because in its opinion the Commission made no findings regarding additional temporary total disability benefits. Therefore, we remand on this issue for a finding to be made.

Affirmed in part; reversed in part; and remanded for proceedings in keeping with this opinion.

CRACRAFT, C.J., and ROGERS, J., agree.