Wilma CROSS *v.* CRAWFORD COUNTY MEMORIAL HOSPITAL

CA 95-721                                               923 S.W.2d 886

Court of Appeals of Arkansas
En Banc
Opinion delivered June 19, 1996

*Walker Law Firm*, by: *Eddie H. Walker, Jr.* and *R. Scott Zuerker*, for appellant.

*Shaw, Ledbetter, Hornberger, Cogbill & Arnold*, by: *E. Diane Graham*, for appellee.

JUDITH ROGERS, Judge. This is an appeal from the Workers' Compensation Commission's order affirming and adopting the administrative law judge's decision denying appellant's claim for wage-loss disability benefits. On appeal, appellant argues that there is no substantial evidence to support the Commission's denial of wage-loss disability benefits. We agree that the Commission's decision cannot stand, and we reverse.

The record reveals that appellant was a fifty-nine-year-old practical nurse who worked for appellee for twenty-four years. She has a seventh grade education and worked her way to the position of nurse's aide. Appellant attended LPN school and passed her state boards before taking the position with appellee. Her duties as a practical nurse included total patient care. She was assigned four or

five patients whom she bathed and fed. She also administered medication to those patients. The record also indicates that appellant's job required heavy lifting and repetitive bending.

On December 9, 1991, she sustained an admittedly compensable injury to her back and was assigned a 10% anatomical impairment rating. Appellee paid temporary partial disability benefits until March 10, 1994, and permanent partial disability benefits based on a 10% permanent physical impairment rating. In June 1994, appellant was laid off along with twenty other employees. Appellant testified that she has sought employment since the lay-off, but she has not been able to find employment.

The medical evidence reflects that appellant was seen by Dr. Richard D. DeKok, Director of Physical Therapy with Crawford Memorial Hospital. On June 28, 1994, Dr. DeKok noted that it was his goal as far back as December 1993 that appellant could increase to an eight-hour light duty shift with certain restrictions. The record indicates, however, that appellant returned to light duty in July 1993, and was provided only a four-hour work day until she was laid off in June of 1994. Appellant testified that she went back to work expecting an eight-hour day, and she did not understand why she was only given four hours. She also said that she never refused to work. Appellant stated that even though the work bothers her physically, she would rather work than draw social security disability.

Appellant also testified that when she returned to light duty in 1993 she discussed attending classes at Westark Community College with Ms. Jo Hilgendorf, appellee's Human Resource Director. Appellant said that she checked the class schedule and contacted Ms. Hilgendorf. According to appellant, Ms. Hilgendorf said that she would "get back with her," but Ms. Hilgendorf never called her back to confirm the courses. Appellant also stated that she was not made aware that appellee would be responsible for the cost of the courses. Appellant filed a claim requesting additional temporary total disability benefits and wage-loss disability benefits.

At the hearing, appellant was the only witness to testify. It was not until approximately nine days after the hearing that Ms. Hilgendorf's deposition was taken. She testified that appellee would cover the costs of courses at Westark College and have a position for appellant if she completed the courses and if a job were available.

Appellant gave a deposition in response to that of Ms. Hilgendorf in which she said that she would be willing to go to Westark College for training in typing and computer skills if appellee shouldered the costs.

The ALJ stated in his opinion:

> If the claimant successfully completes the courses required at Westark Community College and if the respondent/employer rehires the claimant at a wage equal to or greater than the wage she was drawing prior to her injury, then the claimant does not have a wage loss disability. The claimant would argue that if she cannot complete the courses or if the respondent/employer does not re-employ her, then she has a wage loss disability. *It appears to me that the issue of permanency was prematurely addressed.* The issue should have been couched in terms of a request for rehabilitation benefits. It was not, therefore I find that claimant failed to prove by a preponderance of the credible evidence that she has a wage loss disability. (Emphasis added.)

After making a finding that the issue of wage loss was premature, the ALJ summarily denied appellant wage-loss disability because of insufficient credible evidence. It appears from the ALJ's decision that his basis for the denial of wage-loss benefits was that the issue was premature and that the issue should have been "couched in terms of a request for rehabilitation benefits." We find that the ALJ erred in denying appellant wage-loss disability benefits after he determined the issue to be premature. A finding on the issue of wage-loss disability should have been held in abeyance based on the ALJ's finding. Therefore, we reverse the Commission's denial of wage-loss disability benefits in light of its finding that the issue was premature.

We also note, that despite the Commission's finding that the issue of permanency was premature, the Commission failed to make specific findings of fact in determining appellant's entitlement to wage-loss disability benefits. In addition, the limited findings that the Commission did make are not supported by the record.

The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other matters

affecting wage-loss, such as the claimant's age, education, and work experience. *Bradley* v. *Alumax,* 50 Ark. App. 13, 899 S.W.2d 850 (1995). "The employer or his workers' compensation insurance carrier shall have the burden of proving the employee's employment, or the employee's receipt of a bona fide offer to be employed, at wages equal to or greater than his average weekly wage at the time of his accident." Ark. Code Ann. § 11-9-522(c)(1) (Repl. 1996).

The ALJ made the following findings regarding wage-loss disability:

> Even prior to the June 1994 layoff the claimant was advised by Jo Hilgendorf, Human Resources Director for Crawford County Memorial Hospital, that Crawford County Memorial Hospital would pay for computer training at Westark Community College which is located in Fort Smith. After schooling she would be employed by the respondent employer in either medical records or admissions. She would also be employed at the same rate of pay she was making prior to her compensable injury. For reasons known only to the claimant, she showed no interest in attending Westark Community College for training.

The ALJ failed to make specific findings with regard to the factors it should have considered when determining the issue of wage-loss disability benefits. The ALJ did not indicate that he considered appellant's age, education, work experience, or medical condition. The Commission adopted that ALJ's decision which failed to make sufficient factual findings that would enable the appellate court to conduct a meaningful review of the Commission's decision. *See Arkansas Dep't of Health* v. *Williams,* 43 Ark. App. 169, 863 S.W.2d 583 (1993). A specific finding must contain all the specific facts relevant to the contested issue or issues so that the reviewing court may determine whether the Commission has resolved those issues in conformity with the law. *Wright* v. *American Transportation,* 18 Ark. App. 18, 709 S.W.2d 107 (1986). In this case, the ALJ failed to make specific findings with regard to the issue of wage-loss disability, and the limited findings that were made do not appear to be supported by the record.[1]

---

[1] The dissent does make specific findings from the evidence in the record to support the

The record reveals that there was no actual offer of employment made by appellee to appellant. Ms. Hilgendorf said that *if* appellant was capable of performing the work, *if* a job was available, and *if* appellant could work eight hours a day then there *may* be a position as a ward secretary or in medical records when the computer equipment arrived. She testified that there was not a job available at the present time based on appellant's current level of experience, education, and medical condition.

■ Arkansas Code Annotated § 11-9-522(c)(1) places the burden on the employer of providing "a bona fide offer to be employed." This means that there must be an actual offer of employment. *See Weyerhaeuser Co.* v. *McGinnis*, 37 Ark. App. 91, 824 S.W.2d 406 (1992). The evidence in this case does not show that appellant was offered a job. In fact, the evidence shows that any type of job available to appellant was speculative and based on future circumstances. Also, there is *no* evidence in the record indicating what rate of pay appellant would receive if she returned to a job with appellee. Furthermore, in noting that "[f]or reasons known only to the claimant, she showed no interest in attending Westark Community College for training," the ALJ completely disregarded appellant's testimony explaining why she had not attended classes. It would have been appropriate for the ALJ to make a credibility determination with regard to appellant's testimony on this point, but that is not what occurred.

■ Ordinarily, we would remand a case when the Commission fails to make specific findings to support its conclusion on an issue. However, in this case, the Commission's decision must be reversed because of the Commission's finding that the issue of wage-loss was premature. Consequently, the onus will be on appel-

Commission's denial of wage-loss disability. In accusing the majority of not following the appropriate standard of review, the dissent has done exactly what it condemns. The dissent has made credibility determinations, weighed the evidence, and gone to the record to bring forth evidence to support its position. While there may be evidence in the record to support a finding one way or the other, neither the ALJ nor the Commission resolved the wage-loss issue by appropriate findings of fact. *See Sonic Drive Inn* v. *Wade*, 36 Ark. App. 4, 816 S.W.2d 889 (1991). It is not our duty or role on review to go to the record and make those specific findings of fact. Only when the Commission fails in its responsibility to set forth specific findings of fact or when it determines an issue to be premature but then rules on that issue, does it then become our responsibility to correct the Commission's error by either remanding the case or reversing the decision.

lant to file a claim for wage-loss disability at an appropriate time when the issue is ripe for consideration.[2]

Reversed.

COOPER, ROBBINS, and MAYFIELD, JJ., agree.

JENNINGS, C.J., and GRIFFEN, J., dissent.

WENDELL L. GRIFFEN, Judge, dissenting.

> *She was the daughter of Zeus alone. No mother bore her.*
> *Full-grown and in full armor, she sprang from his head.*

— Edith Hamilton, *Mythology* 29 (1942)

I respectfully dissent from the court's decision reversing the Commission because I believe that the Commission's decision that appellant failed to prove her entitlement to benefits for diminution of her wage-earning capacity beyond her 10% physical impairment rating is supported by substantial evidence. Appellant is a 59 year-old licensed practical nurse who completed the seventh grade, obtained her GED, and then completed nurses' aide training. She sustained a compensable injury December 10, 1991, and was assigned the impairment rating by her authorized doctor. She sought additional permanent disability benefits for diminution of her capacity to earn wages, and argues that she is unable to work full days and lacks the training for a better paying job. The Commission weighed the evidence on her claim for additional benefits, found that she had failed to meet her burden of proof, and affirmed and adopted the findings and conclusions of the administrative law judge on the wage loss issue. Instead of abiding by the substantial evidence standard of review that applies to workers' compensation cases, the majority has now elevated itself to a super-Commission in order to reverse the Commission. Because I am convinced that the substantial evidence standard deserves more than lip service from the appellate court responsible for deciding the majority of workers' compensation appeals in Arkansas, I write to explain why I cannot join in that decision.

---

[2] The dissent incorrectly notes that this case is remanded to the Commission "so that the parties may develop and present proof about appellant's training and employment." This case is being reversed because an issue was determined to be premature. The burden is on appellant to file a claim in the future if she wishes to seek wage-loss disability benefits.

Appellant's doctor diagnosed her injury as a healing grade II compression fracture of T-10, without neurological defects, and accompanied by osteoporosis. She was also evaluated by a neurosurgeon who opined that she needed to wean herself from a back brace, begin physical therapy, and enter a fitness program to strengthen her back muscles. The director of physical therapy at Crawford Memorial Hospital (where appellant worked) noted that appellant could tolerate an eight-hour light duty work schedule if she avoided heavy lifting and was not restricted to remaining in a fixed position for extended periods of time. The employer returned her to light duty work, but was unable to retain her because of a reduction in its patient census. Appellant was laid off with nineteen other employees due to the decreased patient census in June 1994.

Even before the layoff occurred, appellant had been advised by her employer's human resource director that the employer would pay for her to obtain computer training at Westark Community College, and that she would be employed by the employer after the training to work in either medical records or admissions, and at her pre-injury wage. Appellant made no attempt to enroll in that training, and claims that she did not know about it until the hearing occurred on her claim. Instead, she filed for unemployment benefits several days after the layoff, and was drawing those benefits as of August 15, 1994, when her claim was heard by the administrative law judge. Despite the physical therapy director's indication that she could tolerate an eight-hour light duty work schedule and despite numerous physical therapy record entries indicating that appellant had been encouraged to increase her work hours before the layoff occurred, appellant did not increase the work hours and denied that she had even been encouraged to work longer than five hours a day. Her clinical examinations produced normal MRI and neurological findings, and the medical proof clearly shows that the compression fracture of her thoracic spine had healed.

I review this proof because our substantial evidence standard requires that we do so. We are not required to engage in this review in order to determine whether we would have reached the same result that the Commission reached. It is fundamental law that an appellate court reviews the evidence and all reasonable inferences from it in the light most favorable to the findings of the Workers' Compensation Commission, whose findings will be upheld if there is any substantial evidence to support its result, even if the prepon-

derance of the evidence would support a different result. Because appellate review is not de novo, we are not to be concerned with the weight of the evidence nor the credibility of witnesses. *Hawthorne* v. *Davis*, 268 Ark. 131, 594 S.W.2d 844 (1980). The proposition has been cited so many times that citation is virtually unnecessary that on appeal from a decision of the Commission, the reviewing court is not privileged to consider the evidence de novo or to weigh the evidence, but must give the evidence its strongest probative force in favor of the actions of the Commission, which carry the same weight as a jury verdict. *See O.K. Processing, Inc.* v. *Servold*, 265 Ark. 352, 578 S.W.2d 224 (1979); *Barksdale Lumber Co.* v. *McAnally*, 262 Ark. 379, 557 S.W.2d 868 (1977). On appeal from a decision of the Commission, the evidence must be viewed most favorably to the findings of the Commission, whether they be for the claimant or the employer, and the decision must be affirmed unless there was no substantial evidence to support the Commission's decision. *Turner* v. *Lambert Const. Co.*, 258 Ark. 333, 524 S.W.2d 465 (1975). Where a claimant appeals from an adverse Commission decision, she has the burden of showing that the proof before the Commission was so nearly undisputed that fair-minded persons could not have arrived at the Commission's adverse finding. *Franks* v. *Amoco Chemical Co.*, 253 Ark. 120, 484 S.W.2d 689 (1972).

The clear message from these holdings is that our appellate function in performing substantial evidence review is not to weigh the evidence as if we were the Commission. We do not exist to give losing parties a second chance to meet their burden of proof. Implicit in the substantial evidence standard of review is the view that where a trier of fact is confronted with conflicting evidence capable of supporting more than one conclusion, any conclusion supported by that evidence is reasonable. This is but another way of recognizing that evidence susceptible to more than one conclusion can logically produce different conclusions in the minds of reasonable people. The fact that we might have reached a different result from that reached by the Commission is immaterial and does not warrant reversal if reasonable people could have reached the same result that the Commission reached.

I cannot agree that reasonable persons who were confronted with proof showing that appellant made no effort to pursue retraining, failed to comply with repeated attempts by doctors and physical

therapists to increase her working hours, and promptly applied for unemployment benefits when the layoff occurred could not have concluded that she failed to prove that her capacity to earn her regular wages had been permanently diminished *due to the compression fracture sustained at work.* Indeed, it is noteworthy that the opinion of the Court does not even suggest that the majority holds this view, although that is the upshot of the result. Appellant may have a diminished capacity to earn due to her refusal to aggressively pursue the retraining opportunity. Her earning capacity may be diminished because she is unwilling to wean herself from the back brace that doctors have told her to put aside. Her capacity may be diminished because she is motivated to receive whatever sympathy that one might have for a person claiming to be disabled. But the entity responsible for deciding if she has sustained a permanent diminution in her earning capacity due to the compensable injury is manifestly the Arkansas Workers' Compensation Commission, not the Arkansas Court of Appeals.

The Seventy-Ninth General Assembly apparently contemplated the very type of judicial disregard of the substantial evidence standard and result-oriented decision-making that this case demonstrates when it enacted Act 796 of 1993, and made what many observers may deem drastic changes in Arkansas workers' compensation law. The General Assembly left no doubt why it deemed the changes necessary, because its motivation is bluntly stated at Ark. Code Ann. § 11-9-1001 (Repl. 1996):

> The Seventy-Ninth General Assembly realizes that the Arkansas workers' compensation statutes must be revised and amended from time to time. *Unfortunately, many of the changes made by this act were necessary because administrative law judges, the Workers' Compensation Commission, and the Arkansas courts have continually broadened the scope and eroded the purpose of the workers' compensation statutes of this state. . . . In the future, if such things as the statute of limitations, the standard of review by the Workers' Compensation Commission or courts . . . or the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and not be done by administrative law judges, the Workers' Compensation Commission, or the courts.* (Emphasis added.)

The decision reached in this case is a gross violation of the substantial evidence standard of review that has existed in this state

since 1939 when our workers' compensation scheme took effect. The majority explains its decision by relying upon an observation made by the administrative law judge that appellant's claim for permanent disability benefits for diminution of her earning capacity appeared premature. The law judge made that observation because appellant had not been retrained and had not returned to gainful employment. The result reached by the majority appears prompted by the concern that the Commission prematurely addressed the wage loss disability question, and the appeal is disposed of by remanding the case to the Commission so that the parties may develop and present proof about appellant's training and employment.

The flaw in that reasoning is that appellant did not object to the wage loss issue being adjudicated. To the contrary, she sought the hearing and put this very issue squarely before the Commission. She had ample opportunity to produce whatever proof she could present on the wage loss issue, and by doing so, she was essentially opting to forego rehabilitation. That may have been unwise, but if so, the Court of Appeals has no obligation or right to insulate appellant from the logical consequences of her folly. Moreover, we should not require the winning party to endure the risks, costs, and other burdens of another hearing on the same issue of appellant's wage loss when *no one* objected to the first hearing before the Commission *and no one (including appellant)* has made the Commission's decision to proceed with the hearing an issue for appeal.

We have consistently refused to consider issues on appeal that were not raised below,[1] and the majority has cited no authority for the proposition that a party who knowingly and purposely presents a claim for adjudication can object about the claim being decided. The decision reached is a flagrant departure from one of the most basic principles of appellate review — that failure to make a timely and effective objection at the trial level bars appellate review.

---

[1] The majority, in the past, has not only supported the concept that issue preservation is a hallmark of appellate review, but also has held that workers' compensation cases are no exception to the rule. *See Mecco Seed Co.* v. *London,* 47 Ark. App. 121, 886 S.W.2d 882 (1994); *Reed* v. *Reynolds Metals,* 33 Ark. App. 89, 801 S.W.2d 661 (1991); *Curry* v. *Franklin Electric,* 32 Ark. App. 168, 798 S.W.2d 130 (1990); *McClain* v. *Texaco, Inc.,* 29 Ark. App. 218, 780 S.W.2d 34 (1989); *Ward* v. *Fayetteville City Hosp.,* 28 Ark. App. 73, 770 S.W.2d 668 (1989); and *Dedmon* v. *Dillard Dept. Stores, Inc.,* 3 Ark. App. 108, 623 S.W.2d 207 (1981).

Like Athena, who was born fully grown and clad in armor from the brow of Zeus, the idea that the Commission prematurely decided appellant's wage loss claim has sprung from the mind of the majority. The employer must find it amazing, but not amusing, that its judges became its adversaries.

I respectfully dissent from the result that is reached, and the reasoning employed to obtain it.

JENNINGS, C.J., joins in this dissent.