Virgil ECKHARDT *v.* WILLIS SHAW EXPRESS, INC.

CA 97-1543                                      976 S.W.2d 393

Court of Appeals of Arkansas
Division I
Opinion delivered June 17, 1998

*Conrad T. Odom*, for appellant.

*Davis, Cox & Wright*, by: *Constance G. Clark*, for appellees.

ANDREE LAYTON ROAF, Judge. Virgil Eckhardt appeals the amount of workers' compensation benefits awarded to him as a result of two admittedly compensable injuries he sustained while working as a truck driver for Willis Shaw Express, Inc. On appeal, Eckhardt argues: 1) the Commission's decision to exclude from its calculation of his weekly wages certain per diem payments that he received in lieu of salary is not supported by substantial evidence and is in error as a matter of law; and 2) the Commission's opinion that he suffered only a three percent wage-loss disability as a result of his compensable injuries is against the weight of the substantial evidence and is in error as a matter of law. We agree that the Commission erred, and we reverse and remand for a proper award of benefits.

Eckhardt is sixty-two years old and has a high-school education. In addition to being a truck driver, his work history includes time as an airplane mechanic and district delivery manager for a regional newspaper. He was employed as a "short-haul" truck driver for Willis Shaw Express, Inc., and he was compensated at a

rate of $425 per week instead of by the miles he drove. If he drove more than 1,700 miles in a work week, however, he received a bonus, and if he was required to be away from home over night, $35 of his salary was paid as per diem or a "subsistence" allowance for each such night. These per diem payments were not subject to either state or federal withholding, and accordingly, boosted his take-home pay.

On June 19, 1994, Eckhardt suffered the first of two compensable injuries that he sustained while working for Willis Shaw Express, when he struck his head on the roof of the cab of the truck he was driving, injuring his head and neck. Following this incident, Eckhardt's driving duties were restricted to "local shuttling" within the Springdale, Rogers, and Fayetteville area. Eventually, he returned to his regular duties.

On August 10, 1995, Eckhardt sustained his second compensable injury when he was involved in a motor-vehicle accident. Following that accident, he was restricted to light duty, and after he was found to be medically maximized, his release included significant lifting and work restrictions. His duties were reduced to local shuttling and detailing trucks. In March of 1996, Eckhardt's pay was reduced to $8.00 per hour.

Willis Shaw Express had accepted both injuries as compensable and paid benefits to Eckhardt, including medical expenses, temporary total disability benefits, and a five percent permanent anatomical impairment rating. However, Eckhardt sought additional compensation, which Willis Shaw Express denied. On August 27, 1996, Eckhardt's claim was heard by an administrative law judge (ALJ) on his request for an additional two weeks temporary total disability, reimbursement for prescription expenses, wage-loss disability payments over and above the five percent anatomical impairment rating, and attorney fees.

The salary upon which Eckhardt's compensation was to be calculated was also contested at the hearing. Willis Shaw Express claimed that his temporary total disability should have been calculated based on his salary exclusive of per diem payments. The ALJ essentially accepted Willis Shaw Express's calculations, and awarded benefits based only on Eckhardt's "taxable income." The

ALJ also awarded a three percent wage-loss disability to the body as a whole, over and above the five percent permanent impairment rating.

Both Eckhardt and Willis Shaw Express appealed, and the Commission affirmed the ALJ's decision with regard to the award of three percent wage-loss disability, but slightly modified the calculation of Eckhardt's weekly wage. Regarding the calculation of Eckhardt's weekly wage, the Commission stated that his per diem payments did not constitute "real economic gain" over and above his expenses on the road. Asserting that this issue was addressed in *Employers Ins. v. Polar Express, Inc.*, 780 F. Supp. 610 (W.D. Ark. 1991), the Commission found it proper to exclude the per diem payments from its calculation of Eckhardt's average weekly wage. To calculate his weekly wage, it took Eckhardt's gross salary for the year preceding his injury, exclusive of the per diem payments, and divided by fifty-two. This calculation yielded an average weekly wage of $329.02 prior to his 1994 injury, and $362.42 prior to his 1995 injury.

In sustaining the ALJ's award of a three percent wage-loss disability, the Commission found that Eckhardt's current salary of $8.00 per hour gave him a gross wage of $320 per week, which was very close to what he earned at the time of his 1994 injury and only slightly lower than what he was earning at the time of his 1995 injury. The Commission also made a finding, based upon his "excellent" work history, that Eckhardt possessed "numerous" transferable skills. Nonetheless, it found that Eckhardt did have the potential to earn a higher salary when he was physically able to drive trucks and that a wage-loss award was thus appropriate.

Eckhardt first argues that the exclusion of his per diem payments from the calculation of his wages for the purpose of temporary total disability benefits is not supported by substantial evidence and is in error as a matter of law. Eckhardt asserts that the Commission erred in relying on *Employers Ins. v. Polar Express, Inc., supra,* to make this determination. He contends that: 1) the cases are factually distinguishable because the per diem at issue in *Polar Express* was calculated differently and for different purposes; 2) *Polar Express* has no value as precedent for his case because it

was decided in federal district court, and the Commission ignored its own precedent in making this ruling; and most importantly, 3) the issue in *Polar Express* involved the interpretation of National Council on Compensation Insurance (NCCI) guidelines for determining Polar Express's workers' compensation insurance premiums, and not the interpretation of Ark. Code Ann. § 11-9-102(19) (Supp. 1997), that section of Arkansas's workers' compensation law in which wages are defined. Regarding this last point, Eckhardt argues that this court should look to that code section for guidance in resolving this issue. Eckhardt's argument has merit.

■ Arkansas's workers' compensation law defines "wages" in pertinent part as:

> the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, including reasonable value of board, rent, housing, lodging, or similar advantage received from the employer.

Ark. Code Ann. § 11-9-102(19). In contrast, the NCCI guidelines, as referenced in *Polar Express*, treat reimbursement for expenses incurred by employees, except for power tools, as "remuneration" properly excluded from the calculation of workers' compensation policy premiums. While certain forms of wages, as set forth in Ark. Code Ann. § 11-9-102(19) would also qualify as "remuneration" under the NCCI guidelines, the statute embraces a much more inclusive concept of what constitutes compensation. Moreover, whereas the company and its workers' compensation carrier in *Polar Express* agreed that the NCCI guidelines applied to that case, the guidelines are not applicable in Eckhardt's case.

Reviewing Eckhardt's pay records makes it clear that the Commission's decision is not supported by substantial evidence. Eckhardt testified, and it was confirmed by Alan Roller, vice-president for human resources and safety at Willis Shaw Express, that he received a $35 subsistence allowance *in lieu of* $35 of his $425 per week salary, for each night that his job required him to be away from home. These payments were clearly compensation. One need look no further than the payroll record for January 22,

1992, to understand the true nature of these payments. That week, Eckhardt received $400 in per diem and only $25 in salary. It is absurd to conclude that he would receive the least amount of compensation in the weeks in which he worked the most.

Calling this salary per diem was simply a legal way under the federal and state tax codes whereby Willis Shaw Express could boost Eckhardt's take-home pay, and coincidentally, avoid reimbursing him for his expenses. For example, for the week of January 22, 1992, only $1.91 was withheld from Eckhardt's pay. By comparison, for the week of October 7, 1992, when Eckhardt received no per diem, which presumably means that he was home every night, $32.51 was withheld for FICA, $40.74 withheld for federal income tax, and $11.06 for state income tax.

■ ■ On appellate review, the duty of this court is to review questions of law, and we may modify, reverse, remand for rehearing, or set aside an order, if the facts found by the Commission do not support it. Ark. Code Ann. § 11-9-711(b)(4) (Repl. 1996); *See Harvest Foods v. Washam*, 52 Ark. App. 72, 914 S.W.2d 776 (1996). Because we find the Commission's decision to be based on an erroneous interpretation of the law, we reverse and remand for calculation and award of benefits consistent with this opinion.

Eckhardt next argues that the finding that he suffered only a three percent wage-loss disability as a result of his compensable injuries is "against the weight of the substantial evidence" and is in error as a matter of law. He contends that the award of only a three percent wage-loss disability was grossly inadequate. Eckhardt cites his age, education, work experience, and his medical restrictions as reasons for an award of a greater wage-loss disability.

■ The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Cross v. Crawford County Mem. Hosp.*, 54 Ark. App. 130, 923 S.W.2d 886 (1996). The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other matters affecting wage-loss, such as the claimant's age, education, and work experience. Ark. Code Ann. § 11-9-522(c)(1) (Supp. 1997); *Bradley v. Alumax*, 50 Ark. App. 13, 899 S.W.2d 850 (1995).

■ Here, the Commission found, in addition to what they perceived as a situation where Eckhardt was earning a wage comparable to what he received before his injury, that transferable skills gained from other jobs, his excellent employment record, and his high-school education all militated in favor of a minimal award of wage-loss disability. Nonetheless, it awarded wage-loss disability because it found that he was physically able to make more money when he was able to perform the duties of a truck driver. Because the Commission erred in calculating Eckhardt's weekly wage, it failed to recognize the full amount by which his earning capacity was reduced. Based on its miscalculation of Eckhardt's wages as a truck driver, the Commission erroneously concluded that he was making nearly the same wage detailing and shuttling equipment. Accordingly, this case must be reversed and remanded for reconsideration of the amount of wage-loss disability. Ark. Code Ann. § 11-9-711(b)(4).

Reversed and remanded.

NEAL and MEADS, JJ., agree.