Frankie SAPP *v.* PHELPHS TRUCKING, INC.

CA 98-207                                        984 S.W.2d 817

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered December 16, 1998

*Denver L. Thornton,* for appellant.

*Laser, Wilson, Bufford & Watts, P.A.,* by: *Thomas L. Diaz* and *Brian A. Brown,* for appellee.

D. FRANKLIN AREY, III, Judge. The Workers' Compensation Commission determined that appellant Frankie Sapp failed to prove entitlement to additional permanent partial disability benefits over and above a 5% physical impairment rating to his lumbar spine. On appeal, appellant argues that the Commission's decision is not supported by substantial evidence. We affirm.

■ ■ When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is sup-

ported by substantial evidence. *Oak Grove Lumber Co. v. Highfill,* 62 Ark. App. 42, 968 S.W.2d 637 (1998). In cases where a claim is denied because a claimant failed to show entitlement to compensation by a preponderance of the evidence, the substantial evidence standard of review requires that we affirm if a substantial basis for the denial of relief is displayed by the Commission's opinion. *Bates v. Frost Logging Co.,* 38 Ark. App. 36, 827 S.W.2d 664 (1992). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Service Chevrolet v. Atwood,* 61 Ark. App. 190, 966 S.W.2d 909 (1998). The question is not whether the evidence would have supported findings contrary to those made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case de novo. *University of Ark. Med. Sciences v. Hart,* 60 Ark. App. 13, 958 S.W.2d 546 (1997).

We recognize that it is the function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony. *Service Chevrolet, supra.* It is the responsibility of the Commission to draw inferences when the testimony is open to more than a single interpretation, whether controverted or uncontroverted; and when it does so, its findings have the force and effect of a jury verdict. *Oak Grove Lumber Co., supra.*

Appellant sustained a compensable injury on November 17, 1993, when he was struck by a tree during the course of his employment as a logger. Appellant was initially treated by Dr. D'Orsay Bryant, an orthopedist, who diagnosed a cervical and lumbosacral strain with possible disc disease. Dr. Bryant referred appellant to Dr. Richard Pillsbury, an otolaryngologist, for appellant's complaint of loss of hearing in his right ear. Dr. Pillsbury did not detect any permanent hearing problems, but referred appellant to Dr. Shailesh Vora, a neurologist. Dr. Vora treated appellant for complaints of headaches, anxiety, depression, and memory loss. Appellant gave Dr. Vora a history of being rendered unconscious by his compensable injury. Although appellant's tests were normal, Dr. Vora assigned him a 25% impairment rating for epilepsy, and a 5% physical impairment rating for the lumbar disc.

Appellant did attempt to go back to work. He drove a log skidder for another logger, but was eventually laid off. Appellant then drew unemployment compensation. He testified that he did not know of any other job that he could do, because he had only worked in the logging woods, and that he had not really tried to find another job.

On January 15, 1996, an independent medical evaluation was performed by Dr. Reginald Rutherford, a neurologist. Dr. Rutherford reported that appellant's neurological investigations proved normal, with the history provided by appellant and a review of the medical documentation failing to substantiate the allegation of cerebral concussion. Dr. Rutherford did not believe that appellant would benefit from further attempted medical or psychological intervention. He opined that there was no objective evidence to substantiate the diagnosis of epilepsy.

Appellant received temporary total disability benefits, medical benefits, and permanent partial disability benefits for a 5% impairment rating to his spine. He sought an additional 25% impairment rating for posttraumatic epileptic seizures, and additional permanent partial disability benefits for loss of earning capacity.

In its opinion denying additional benefits, the Commission noted that the objective medical evidence of record did not substantiate a finding that appellant sustained some type of epileptic or seizure disorder as a result of his compensable injury. It observed that there were no objective medical findings to substantiate Dr. Vora's rating, and that Dr. Rutherford testified in his deposition that there were no objective findings for the alleged epilepsy diagnosis. Therefore, the Commission believed the only physical impairment rating was a 5% rating to appellant's lumbar spine, which had been accepted as compensable and paid in full.

■ ■ It is well settled that the Commission has the authority to accept or reject medical opinion and the authority to determine its medical soundness and probative force. *Oak Grove Lumber Co., supra.* This medical evidence constitutes substantial evidence in support of the Commission's decision denying appel-

lant an additional 25% impairment rating for posttraumatic epileptic seizures.

Regarding additional wage loss disability, the Commission found that appellant was not a credible witness and that he failed to present credible testimony that he was entitled to any additional benefits beyond the 5% impairment rating previously paid. The Commission noted that, although appellant testified that he was unable to work, the record indicated that he worked for at least six months after being released by Dr. Vora once his workers' compensation benefits ceased. He then drove a log skidder until he was laid off by his employer. Appellant testified that he was capable of working as a skidder driver and implied that he would have continued to do so had he not been laid off. The Commission also noted that appellant drew unemployment benefits after being laid off, which implied that appellant held himself out as being physically capable of working. The Commission concluded, due to appellant's ability to return to work for a six month period, his negative attitude in seeking or searching for further employment after being laid off, and his relatively minor physical impairment rating for his injury, that appellant failed to prove that he suffered from a decrease in his ability to earn wages.

Arkansas Code Annotated § 11-9-522(b)(1) (Supp. 1997) provides:

> In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his future earning capacity.

The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Bradley v. Alumax*, 50 Ark. App. 13, 899 S.W.2d 850 (1995). In making this determination, the Commission may consider factors such as a claimant's lack of motivation to return to work or failure to attempt to seek work. *See id.*

In this instance, the Commission's determination turned on its view of the appellant's credibility and the weight to

be given the evidence. The Commission specifically noted that appellant failed to present any credible testimony that he was entitled to any additional benefits over and above the 5% physical impairment rating previously paid. We believe the Commission's decision is supported by substantial evidence.

Affirmed.

PITTMAN, BIRD, and GRIFFEN, JJ., agree.

NEAL and ROAF, JJ., dissent.

OLLY NEAL, Judge, dissenting. While I agree with the majority's determination that appellant failed to prove entitlement to an additional 25% impairment rating for posttraumatic epileptic seizures, I disagree with the determination that appellant is not entitled to additional permanent partial disability benefits due to a loss in his wage-earning capacity.

The majority adequately sets forth our standard for conducting an appellate review of a workers' compensation case. However, we must remain mindful that although we review the evidence in the light most favorable to the Commission's findings, our function on appeal is not merely to rubber stamp the Commission's decisions. Although appellant asserts that he is entitled to permanent partial disability due to a loss in his wage-earning capacity, the majority glosses over the factors that the Commission considers in determining a claimant's entitlement to permanent partial disability, where a loss in the claimant's ability to earn wages comparable to those earned prior to a compensable injury has occurred.

It is well settled that a worker who sustains an injury to the body as a whole may be entitled to wage-loss disability in addition to his anatomical loss. *Glass v. Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961). The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Cross v. Crawford County Mem. Hosp.*, 54 Ark. App. 130, 923 S.W. 2d 886 (1996). The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience. *Eckhardt v. Willis*

*Shaw Express, Inc.*, 62 Ark. App. 224, 970 S.W.2d 316 (1998). Moreover, a worker may be entitled to additional wage-loss disability even though his wages remain the same or increase after the injury. *Bragg v. Evans-St. Clair, Inc.*, 15 Ark. App. 53, 688 S.W.2d 956 (1985).

At the time of his injury, appellant was approximately forty years old. He could not read, write, or count money, and had been employed in logging since the age of fourteen. Although appellant returned to work for a period of time after his injury, it is undisputed that the reason for his return to work was that he had no money. It is also undisputed that appellant was laid off from work as a skidder operator because he complained of back pain to his supervisor. After appellant was laid off, he applied for and received unemployment compensation benefits, while making himself available for employment.

It puzzles me how the Commission could conclude, and the majority agree, that appellant has a negative attitude in seeking or searching for further employment, where the evidence shows that he sought employment and became employed, only to be laid off because he informed the employer that he was experiencing back pain. The majority seems to focus on the fact that appellant was assigned only a 5% permanent anatomical impairment rating in determining that his compensable injury did not render him permanently disabled.

The substantial evidence standard of review requires that we affirm a decision of the Commission if a reasonable mind would accept the evidence before the Commission as adequate to support a conclusion. *Willmon v. Allen Canning Co.*, 38 Ark. App. 105, 828 S.W.2d (1992). It is my view that no reasonable mind could conclude that a forty-year-old who cannot read, write, or count, who has only worked in logging, and is not able to continue to work in logging, has not suffered a permanent impairment to his ability to earn wages.

Professor Larson makes the following analysis of a compensable disability:

> Compensable disability is inability, as the result of a work-connected injury, to perform or obtain work suitable to the claim-

ant's qualifications and training. The degree of disability depends on impairment of earning capacity, which in turn is presumptively determined by comparing pre-injury earning with post-injury earning ability . . .

Total disability may be found, in spite of sporadic earnings, if the claimant's physical condition is such to disqualify him for regular employment in the labor market. Conversely, when the claimant is unable to obtain employment because of his physical condition, medical evidence that he could perform such work if he could get it will not detract from his status of total disability.

Workmen's compensation benefits fall initially into two categories; benefits to the workman for physical injury, and benefits to dependents in case of death. Benefits for physical injury, in turn, are of two kinds: wage-loss payments based on the concept of disability, and payment of hospital and medical expenses occasioned by any work-connected injury, regardless of wage loss or disability.

4 Arthur Larson & Lex K. Larson, LARSON'S WORKERS' COMPENSATION LAW § 57 (1997).

In *Glass v. Edens*, 233 Ark. 786, 346 S.W. 2d 685 (1961), the supreme court held that the legislature's use of the term of "loss of the use of the body as a whole" does not mean merely functional disability, but also includes, in varying degrees in each instance, loss of use of the body to earn substantial wages. In so holding, the court relied on the following passage from Professor Larson's treatise on workers' compensation law:

The key to the understanding of this problem is the recognition, at the outset, that the disability concept is a blend of two ingredients, whose recurrence in different proportions gives rise to most controversial disability questions: The first ingredient is disability in the medical or physical sense, as evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements and exertions; the second ingredient is *de facto* inability to earn wages, as evidenced by proof that claimant has not in fact earned anything.

The two ingredients usually occur together, but each may be found without the other: A claimant may be, in a medical sense utterly shattered and ruined, but may by sheer determination and

ingenuity contrive to make a living for himself; conversely, a claimant may be able to work, in both his and the doctor's opinion, but awareness of his injury may lead employers to refuse him employment. These two illustrations will expose at once the error that results from an uncompromising preoccupation with either the medical or the actual wage-loss aspect of disability. An absolute insistence on medical disability in the abstract would produce denial of compensation in the latter case, although the wage loss is as real and as directly traceable to the injury as in any other instance. At the other extreme, an insistence on wage loss as the test would deprive the claimant in the former illustration of an award, thus not only penalizing his laudable effort to make the best of his misfortune but also fostering the absurdity of pronouncing a man nondisabled in spite of the unanimous contrary evidence of medical experts and of common observation. The proper balancing of the medical and wage-loss factors is, then, the essence of the "disability" problem in workmen's compensation.

233 Ark. at 787, 346 S.W.2d at 686-87 (quoting LARSON ON WORKERS' COMPENSATION LAW, § 57.10).

The decision announced by the majority highlights the error that occurs when courts adhere to a rigid policy of focusing its decision regarding wage-loss disability on whether the injured claimant is capable of performing some type of work, instead of focusing on whether, given a claimant's physical condition, education, age, and work experience, he will be able to earn wages comparable to those earned prior to the compensable injury. In the present case, the majority ignores the fact that appellant is functionally illiterate, choosing instead to focus on the fact that he returned to work for approximately six months after his compensable injury, as conclusive proof that he is able to work. If we were allowed to review workers' compensation cases involving wage-loss disability solely on the basis of whether a claimant is capable of doing some type of work, then this court might correctly conclude that because appellant was able to return to work for six months after sustaining a compensable injury, he is not permanently disabled. However, such is not the case and the appellate court considers factors such as a claimant's age, education, and work experience in determining entitlement to permanent disability benefits. *Bradley v. Alumax*, 50 Ark. App. 13, 899 S.W.2d

850 (1995). As recited earlier, the claimant is in his forties, unable to read, write, or count, and has no formal education. His only work experience has been in logging since the age of fourteen. When appellant obtained employment after his compensable injury, his employment was with a previous employer who had been informed of claimant's back injury. There was testimony to the effect that appellant was hired because of his history of being a good worker. However, as soon as appellant complained of back pain the employer laid him off from work.

Bob White, a vocational expert, conducted a vocational assessment of appellant. His report concluded that appellant could return to work if light-duty work was available; however, his evaluation also noted that appellant has no skills and probably has no ability to benefit from further technical or educational training.

The record clearly establishes that appellant is only qualified, based upon his education, skills, and work experience, to perform heavy manual labor. The Commission found that appellant had sustained a 5% permanent impairment to the body as a whole. It is my contention that any impairment to his body necessarily impairs his earning capacity.

It is clear that appellant will not be able to secure future employment in the area in which he is qualified. He will not be able to operate a chainsaw or heavy machinery without aggravation of his compensable back injury; this was proven when he attempted to work following the compensable injury. It is highly unlikely that employers will hire him after learning of the injury to his back. Moreover, it was proven that in the unlikely event that he is able to obtain employment, he will be discharged as soon as he makes complaints regarding his back.

The cold, hard truth of the matter is that the majority, in failing to consider factors relating to wage-loss disability, in affirming the Commission's decision, has refused to acknowledge that there is not substantial evidence in the record to support the Commission's finding that appellant is not entitled to wage-loss disability compensation.

I respectfully dissent.

ROAF, J., joins in this dissent.